UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMPASS LEXECON, LLC,

                  Plaintiff,

    v.

GIRARDI & KEESE,

                  Defendant.

ECF CASE - 09 Civ. 7849 - JSR

**COMPLAINT**

## INTRODUCTION

        This is an action to recover unpaid monies owed to Compass Lexecon, LLC for consulting services it provided to Defendant.

## THE PARTIES

        1.    Plaintiff, Compass Lexecon, LLC ("Compass") is a Maryland limited liability company with its principal office at 332 S. Michigan Ave., Chicago, IL 60604.

        2.    Defendant, Girardi & Keese ("G&K"), a California general partnership formed for the purpose of practicing law in that jurisdiction, is located at 1126 Wilshire Blvd., Los Angeles, CA 90017.

## JURISDICTION AND VENUE

        3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in view of the diverse citizenship of the parties. This civil action arises between a corporate citizen of Maryland and a corporate citizen of California, neither of which has a shared

or common domicile, and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000).

4. This Court has personal jurisdiction over the parties pursuant to the signed Engagement Letter between Compass and G&K dated January 30, 2008 ("Engagement Letter," attached as Exhibit A). The Engagement Letter expressly states that the United States District Court for the Southern District of New York has jurisdiction over any "claim, dispute, or difference" concerning the Engagement Letter "and any matter arising from it." Ex. A at 2.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and the Engagement Letter forum selection clause, which states that venue is appropriate in the United States District Court for the Southern District of New York.

## FACTUAL BACKGROUND

G&K Hires Farrell and Compass as Expert Economic Consultants

6. On or about December 2007, Lingel Winters ("Winters"), co-counsel to G&K in the *Attridge v. Visa, et al.* class action litigation, contacted Dr. Joseph Farrell ("Farrell"), a leading economic expert on antitrust issues, about potentially retaining Farrell as an expert economic consultant for G&K and the *Attridge* putative class. Thereafter, Winters and Thomas Girardi of G&K ("Girardi") had several discussions with Farrell and Dr. Theresa Sullivan of Compass ("Sullivan") regarding the *Attridege* matter, the potential engagement of Farrell and Compass, and the specific areas in which G&K sought expert consultation and testimony.

7. On or about January 28, 2008, Compass sent the Engagement Letter to Girardi, along with a schedule of standard billing rates for Compass and Farrell.

8. On or about January 30, 2008, Girardi returned a signed copy of the Engagement Letter to Compass. Girardi did not make any changes to the terms and conditions of the Engagement Letter. Compass received the signed letter on or about February 8, 2008.

9. The signed Engagement Letter set forth and established the following material terms of the contract between G&K and Compass:

(a) G&K retained Compass for the "purposes of acting as a consulting expert to [c]ounsel for G&K and such other personnel retained by G&K and its [c]ounsel."  Ex. A at 1.

(b) All work would be done "at the request, and under the supervision of, [c]ounsel."  *Id.*

(c) Compass was "entitled to fees at its standard hourly rates for the time spent performing responsibilities under the engagement."  *Id.*

(d) Compass would bill G&K directly for services rendered and Compass was entitled to G&K's "payment within 30 days of billing."  *Id.*

(e) G&K was entitled to request more detailed information on any billing statement, but was required to request such information "within 30 days of submission of the monthly statement."  *Id.*

(f) Both parties had the right to "terminate this agreement upon providing written notice," but upon any such termination by either party, G&K was required to "pay all outstanding invoices."  *Id.* at 2.

(g) Any dispute between the parties was to be "governed by and interpreted in accordance with the laws of the State of New York."  *Id.*

<u>Compass's Performance Under the Contract</u>

10. From December 2007 through January 2009 ("Engagement Period"), Farrell and Compass provided consulting services to G&K in the *Attridge* matter.

11. During the Engagement Period, tasks completed by Compass included: (1) collecting, reviewing and reconstructing data produced by defendants in the *Attridge* matter, (2) conducting regression and other data analyses in order to evaluate damages claims and class certification issues in the case, (3) reviewing relevant case law and academic literature regarding expert damages calculations and class certification issues, (4) preparing preliminary damages calculations and providing assistance to G&K in preparing for settlement conferences; (5) participating in case strategy planning and analysis with Winters and other G&K representatives;

3

and (6) constructing and preparing several drafts of a declaration offering expert opinion in support of *Attridge* class certification.

12. All of the tasks completed by Compass during the Engagement Period were done at the request of, and under the supervision of, G&K or its authorized or appointed representatives.

13. At all times during the Engagement Period, Compass communicated with G&K or its authorized representatives regarding work status, work product assignments and the results of analysis and review. Compass also provided written work product to G&K including but not limited to written damages estimates and drafts of an expert declaration in support of class certification.

14. Throughout the Engagement Period, authorized G&K representatives, including Winters, expressed satisfaction and gratitude for Compass's expert assistance and analysis. For example, on or about June 18, 2008, Winters commented that Compass's preliminary damages analysis was "an impressive piece of work." Again, on or about July 10, 2008, Winters "thank[ed Sullivan] for an exceptional job" and noted that "[Compass's] timely responses and solid judgment [had] been invaluable."

15. Throughout the Engagement Period, Compass issued periodic invoices to G&K for payment. These invoices resulted in a total amount charged of $364,629.28 for services rendered, and were issued according to the following approximate schedule:

(a) On or about April 15, 2008, Compass sent G&K Invoice No. 7157049 for services rendered through March 2008, totaling $ 4,368.49.

(b) On or about June 17, 2008, Compass sent G&K Invoice No. 7163729 for services rendered in April and May of 2008, totaling $5,281.33.

(c) On or about July 29, 2008, Compass sent G&K Invoice No. 7168307 for services rendered in June 2008, totaling $24,936.45.

4

(d) On or about August 21, 2008, Compass sent G&K Invoice No. 7170763 for services rendered in July 2008, totaling $4,976.19.

(e) On or about September 19, 2008, Compass sent G&K Invoice No. 7173441 for services rendered in August 2008, totaling $35,766.88.

(f) On or about October 16, 2008, Compass sent G&K Invoice No. 7176216 for services rendered in September 2008, totaling $83,093.60.

(g) On or about November 21, 2008, Compass sent G&K Invoice No. 7180335 for services rendered in October 2008, totaling $83,387.71.

(h) On or about January 23, 2009, Compass sent G&K Invoice No. 7186468 for services rendered in November and December 2008, including additional months of services provided by Farrell, totaling $114,806.49.

(i) On or about February 24, 2009, Compass sent G&K Invoice No. 7189493 for services rendered in January 2009, totaling $8,012.14.

G&K's Failure to Make Full Payment or Object to Billing or Services

16. G&K received benefit from the expert professional services performed by Compass during the Engagement Period.

17. Upon information and belief, G&K never requested more detailed information about any billing statement within the 30 day time period set forth in the Engagement Letter.

18. Despite receiving the benefits of Compass's services in the *Attridge* litigation, G&K has failed to make full and final payments on all invoices issued by Compass. To date, G&K had only remitted partial payments totaling $69,562.46, according to the following approximate schedule:

(a) On or about August 29, 2008, Compass received payment from G&K in the amount of $39,562.46 as payment for services billed under Invoice Nos. 7157049, 7163729, 7168307 and 7170763.

(b) On or about October 30, 2008, Compass received a partial payment from G&K in the amount of $10,000.

(c) On or about December 15, 2008, Compass received a partial payment from G&K in the amount of $10,000.

>  (d) On or about January 8, 2009, Compass received a partial payment from G&K in the amount of $10,000.

19. On or about December 29, 2008, Sullivan contacted Paul Sizemore, an attorney at G&K, regarding the outstanding invoices.

20. In a letter from Girardi dated December 30, 2008 and received by Compass on or about January 8, 2009, G&K enclosed a partial payment of $10,000 and noted, "the bills are quite a bit larger than we ever thought it would be . . . . I think we have to review budget and services." In this letter, G&K did not request more detailed information about any billing statement.

21. Beginning on or about January 2009 and continuing to the present, several Compass representatives, including Sullivan, Farrell, Jonathan Orszag, and Eric Miller, Executive Vice President and General Counsel of FTI Consulting, Inc., Compass's parent entity, contacted G&K representatives including Girardi, Sizemore, Winters, and other G&K employees numerous times regarding the unpaid account balance totaling $295,066.82. Despite these repeated communications, G&K did not satisfy its outstanding obligation to pay the remaining balance.

22. On or about January 29, 2009, Farrell notified Winters that Sizemore had failed to respond to several written and telephonic attempts to discuss outstanding invoices. Farrell thus ceased work on the *Attridge* matter and indicated to Winters that Compass would perform no further work on the project until the billing dispute was settled. Upon information and belief, Compass billed no time to G&K on the *Attridge* matter after January 9, 2009.

23. Upon information and belief, on or about March 3, 2009, Girardi sent a letter to Compass refusing to pay the outstanding balance, and for the first time, accused Compass of continuing to perform work without proper authorization from G&K.

24. From March to June 2009, Compass and G&K exchanged correspondence about the outstanding monies owed to Compass. G&K never requested more detailed information about any of the invoices.

25. By letter dated May 18, 2009, G&K notified Compass that G&K had retained other experts in the *Attridge* matter and no longer required Compass's services. Since sending this letter, G&K has not satisfied its outstanding balance as required under the terms of the Engagement letter. G&K currently owes $295,066.82 to Compass for services rendered.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### (BREACH OF CONTRACT)

26. Compass adopts and incorporates by reference each of the allegations and claims stated in paragraphs 1 through 25 above as if fully stated herein.

27. The signed Engagement Letter constitutes a binding and enforceable written contract between G&K and Compass under the laws of the State of New York.

28. Under the Engagement Letter, G&K assented and agreed to pay all invoices issued by Compass within 30 days of receipt, or in the case it disputed such invoices or services, to request more detailed information within 30 days of receipt of the invoice.

29. Compass performed its contractual obligations by providing G&K with all work product requested by G&K and its representatives, including but not limited to damage calculation estimates and draft declarations offering expert opinion related to damages and class certification.

30. G&K accepted that work product without requesting more detailed information about a billing statement within 30 days of receipt of an invoice from Compass.

7

31.     G&K has committed, and continues to commit, material breaches of the Engagement Letter by refusing to make full and final payment of the outstanding balances owed to Compass for services rendered to G&K.

32.     As a direct and proximate result of G&K's breach of contract, Compass suffered economic and other consequential losses in an amount not less than $295,066.82, together with interest on all unpaid monthly account balances and all costs incurred in order to collect these balances, including but not limited to attorney's fees.

## SECOND CLAIM
### (DECLARATORY RELIEF)

33.     Compass adopts and incorporates by reference each of the allegations and claims stated in paragraphs 1 through 32 above as if fully stated herein.

34.     Compass is entitled to a declaratory judgment that (1) G&K is in material breach of the contract as defined by the terms of the Engagement Letter; (2) G&K's failure to make timely payments as required under the Engagement Letter has terminated the contract between the parties; and (3) Compass has no further obligations to G&K under the Engagement Letter.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendant, as follows:

(a) On the First Claim, awarding compensatory damages on Plaintiff's claims, in an amount not less than $295,066.82, plus prejudgment interest and any other consequential damages Plaintiff suffered from Defendant's material breach, including but not limited to litigation costs and attorney's fees;

(b) On the Second Claim, awarding declaratory relief to Plaintiff, to the effect that the Defendant materially breached the contract as defined by the Engagement Letter, the contract has been terminated by Defendant, and Plaintiff no longer has any further obligations to Defendant under the contract; and

(c) granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: September 11, 2009

Respectfully submitted,

By: _____
Jennifer Y. Choy (SDNY# JC0803)
JONES DAY
222 East 41st Street
New York, New York 10017
Tel:  (212) 326-8352

Jeffrey Gordon
Kristen Lejnieks
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001

*Attorneys for Plaintiff*
*Compass Lexecon, LLC*